IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| U.S. BANK NATIONAL ASSOCIATION, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CIVIL ACTION 10-0204-WS-N |
|  | ) |  |
| TURQUOISE PROPERTIES GULF, INC., *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**ORDER**

This matter comes before the Court on defendant Turquoise Properties Gulf, Inc.'s Motion for Temporary Restraining Order, Preliminary Injunction and Other Relief (doc. 38). Given that the Motion, which was filed after the close of business on June 16, 2010, purports to seek emergency injunctive relief and pertains to a letter of credit that expires on June 22, 2010, the undersigned has reviewed it on an expedited basis.

**I.      Background.**

On April 30, 2010, plaintiff, U.S. Bank National Association ("U.S. Bank"), brought this action against Turquoise Properties Gulf, Inc. ("Turquoise"), as well as dozens of persons and entities who had entered into pre-construction purchase agreements with Turquoise to purchase condominium units at Turquoise Place, a condominium project developed by Turquoise in Baldwin County, Alabama. The pleadings reflect that U.S. Bank served as successor escrow agent for the Turquoise Place development, pursuant to which it held in escrow millions of dollars in cash, letters of credit, and cash proceeds of letters of credit posted by Turquoise Place unit purchasers as security for their pre-construction purchase agreements. At some point, a dispute arose between Turquoise and U.S. Bank, with U.S. Bank claiming that Turquoise was wrongfully refusing to reimburse it for its fees and expenses and Turquoise claiming that U.S. Bank was wrongfully refusing to pay over certain funds. In early May 2010, U.S. Bank notified Turquoise of its resignation as escrow agent for the Turquoise Place project.

Upon filing this action, U.S. Bank requested leave to interplead all escrowed funds and letters of credit into this District Court on the grounds that it had complied with its duties under the escrow agreement, it had become aware of competing claims to the money and property it was holding as escrow agent, and it was unable to determine the proper disposition or recipient of said money and property. U.S. Bank also brought various other causes of action, including a declaratory judgment claim seeking a declaration that it owes no further duties to Turquoise, and a host of claims for money damages against Turquoise on theories such as indemnity, unjust enrichment, assumpsit/money had and received, and breach of contract. (Doc. 10.)

In its Answer (doc. 18), Turquoise alleged that U.S. Bank had failed and refused to comply with its duties as escrow agent, that it had refused to pay over to Turquoise certain escrowed funds awarded to Turquoise by arbitrators, that U.S. Bank had returned or lost various letters of credit that it was obligated to maintain pursuant to the escrow agreement, and that it had refused to comply with Turquoise's requests and instructions concerning the wiring of funds, the drawing on letters of credit, and the disbursement of funds. On the strength of these factual allegations, Turquoise asserted counterclaims against U.S. Bank seeking compensatory and other damages on theories of breach of contract, breach of fiduciary duty, willful misconduct, gross negligence, and conversion arising from, *inter alia*, its alleged failure to safeguard letters of credit and comply with instructions from Turquoise for drawing on same.

On June 1, 2010, this Court entered an Order (doc. 16) granting U.S. Bank's request for deposit of escrowed funds in the amount of $13,099,040.24 into the registry of this District Court. Pursuant to the June 1 Order, U.S. Bank filed a Notice of Deposit (doc. 22) on June 8, 2010, whereby it deposited the sum of $18,202,579.92 into the registry, and also turned over some 31 letters of credit to the Clerk of Court. (See doc. 23.) One of those letters of credit was described in the Notice as follows: "Regions Bank, L/C#78318258, $262,180 (C-1406)." (Doc. 22, at #18.) This singular letter of credit is the subject of Turquoise's motion for emergency injunctive relief.

**II.    Turquoise's Motion for Temporary Restraining Order and Preliminary Injunction.**
      ***A.    Nature of and Grounds for the Motion.***

Turquoise seeks a temporary restraining order and preliminary injunction because Letter of Credit No. 78318258 (the "Letter of Credit") is due to expire on June 22, 2010, and will not be reissued or extended. The facts alleged by Turquoise in support of this request are as follows:

Defendants I. Michael Weiner and Diane F. Weiner entered into a purchase and escrow agreement with Turquoise back in October 2005, wherein the Weiners agreed to purchase Unit C-1406 of Turquoise Place for the total price of $1,310,900. (Doc. 38, Exh. A. at Exh. 1.)[1] Pursuant to execution of that agreement and as security for same, the Weiners provided Turquoise with the Letter of Credit in the amount of $262,180.00, or 20% of the total purchase price. (Doc. 38, Exh. A, at Exh. 10.) The Weiners defaulted by failing or refusing to close on Unit C-1406 in August 2009. (Doc. 38, Exh. A, at Exh. 2.). On March 22, 2010, Turquoise sent the Weiners a "Notice of Default and Opportunity to Cure" giving them 20 days to cure their default before Turquoise negotiated the letter of credit to retain 15% of the purchase price as liquidated damages. (Doc. 38, Exh. A, at Exh. 3.) The Weiners did not cure their default. By the terms of their purchase agreement, Turquoise became entitled to 15% of the purchase price of Unit C-1406 (or $196,635) as agreed upon and liquidated damages. (Doc. 38, Exh. A, at ¶ 4.) Turquoise maintains that the Weiners have never notified it that they contest Turquoise's entitlement to the 15% liquidated damages under the applicable purchase agreement. (*Id.* at ¶ 5.)

Despite the fact that Weiners defaulted way back in August 2009, and their 20-day period allotted by contract to cure their default expired on or about April 11, 2010,[2] Turquoise apparently never attempted to draw on the Letter of Credit to recover the contractually-agreed liquidated damages until late last week. Indeed, Turquoise's exhibits reflect that on June 11, 2010, Turquoise sent an "Official Notice to Draw LOC" to U.S. Bank, with instructions to "please DRAW 75% of the LOC for the below purchaser in Default as of Closing Date –

---

[1] As with many purchaser defendants in this case, it appears that the Weiners have not yet been served with process. Indeed, on June 14, 2010, U.S. Bank stated in a court filing that it has not received notice or confirmation of service of process as to the Weiners. (Doc. 35, ¶ 7(k)-(*l*).) Additionally, Turquoise states that it mailed the Weiners a copy of its Motion for Temporary Restraining Order on June 16, 2010 at an undisclosed address. (Doc. 38, at 9.) The Court therefore has no information that the Weiners are presently aware of this litigation, much less that they are on notice that they have been joined as defendants and that Turquoise is seeking a temporary restraining order with regard to their Letter of Credit.

[2] Of course, Turquoise could have sent the Weiners a "Notice of Default and Opportunity to Cure" in August 2009 immediately after the Weiners failed to appear at the closing. Had Turquoise done so, the 20-day cure period would have expired sometime in September 2009 and Turquoise would have been entitled to draw on the Letter of Credit some nine months ago.

8/24/2009, and apply the entire amount to our Construction Loan." (Doc. 38, Exh. A, at Exh. 8.) The Court has no idea whether U.S. Bank has responded in any way to the June 11 "Official Notice to Draw LOC" because Turquoise does not say.

According to Turquoise, the reason why these unremarkable circumstances justify the deployment of extraordinary remedies under Rule 65 of the Federal Rules of Civil Procedure is that the Letter of Credit is about to vaporize. In support of this premise, Turquoise submits a document from Regions Bank (the financial institution that issued the Weiners' letter) styled "Notice of Non-Renewal of Letter of Credit No. 78318258" and dated February 17, 2010. That Notice indicates that Regions Bank "elects not to renew" the Letter of Credit (as to which U.S. Bank is the sole named beneficiary) and that it "will not be extended beyond 6/22/2010." (Doc. 38, Exh. A, at Exh. 9.) Turquoise does not indicate what steps, if any, it took in February 2010 either to negotiate that Letter of Credit or to make arrangements with the Weiners for alternative forms of security. Instead, Turquoise filed its Motion for Temporary Restraining Order after 5 p.m. on June 16, 2010, asserting that in the absence of a TRO entered by this Court in the next three business days, Turquoise will have "no recourse" against the Weiners and will be left without a remedy. (Doc. 38, ¶ 17.)

This brings us to the Motion itself. In it, Turquoise requests entry of a TRO and preliminary injunction directing U.S. Bank "to regain custody from the Court" of the Letter of Credit (which is in the possession of the Clerk of Court along with more than two dozen other such letters) and further directing U.S. Bank to "draw seventy-five percent (75%) thereof before its expiration on June 22, 2010, and disburse the proceeds … to credit Turquoise's construction loan." (Doc. 38, at 1.) Simply put, then, Turquoise is asking the Court to order U.S. Bank to get the Letter of Credit back from the Clerk of Court, to draw 75% of it from Regions Bank sometime between now and June 22, and to disburse the proceeds as instructed by Turquoise.

### B. Analysis.

To be eligible for a temporary restraining order or preliminary injunctive relief under Rule 65, a movant must establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d

1032, 1034-35 (11th Cir. 2001). Preliminary injunctive relief "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). Fundamentally, TROs are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller, *Federal Practice & Procedure: Civ.2d* § 2951. Where, as here, the movant seeks mandatory injunctive relief (*i.e.*, an injunction that requires the nonmoving party to take affirmative action), the objective goes well beyond preservation of the status quo. In a mandatory preliminary injunction motion, the movant seeks to alter the status quo, rather than merely preserving it pending trial. Accordingly, "mandatory preliminary injunctions are traditionally disfavored," and "courts should be especially cautious" in issuing them. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208-09 (10th Cir. 2009).[3]

The Eleventh Circuit has emphasized that "[a] showing of irreparable injury is the *sine qua non* of injunctive relief" and that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176 (citations omitted). Indeed, it has been observed that the very "purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United States v. State of Alabama*, 791 F.2d 1450, 1459 (11th Cir. 1986).

In support of its Motion, Turquoise contends that it will suffer irreparable injury unless the requested emergency relief is granted. According to Turquoise, "[i]f the letter of credit expires, Turquoise has no recourse against [the Weiners] for their default and failure to close." (Doc. 38, ¶ 17.) Turquoise adds that, under applicable rules governing standby letters of credit, U.S. Bank, as the named beneficiary, is the only entity that can draw on the Letter of Credit;

---

[3] *See also Bennington Foods LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3rd Cir. 2008) ("where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm"); *Burgos v. University of Central Florida Bd. of Trustees*, 283 F. Supp.2d 1268, 1271 (M.D. Fla. 2003) ("A mandatory preliminary injunction requiring defendant to take affirmative action is proper only in rare instances.") (citation and internal quotation marks omitted).

therefore, a mandatory injunction against U.S. Bank is its only hope of being paid under the Letter of Credit. (*Id.*, ¶ 18.)

This showing of irreparable injury is inadequate for two reasons. First, as the Court alluded to in Section II.A., *supra*, Turquoise's purported need for emergency injunctive relief today is driven to a great degree by its own decisions over the last nine months. There is no conceivable reason why Turquoise could not file its Motion until the early evening of June 16, 2010, a bare three business days before expiration of the Letter of Credit. Turquoise's own exhibits establish that the Weiners were in default back in August 2009. Had Turquoise wanted to recover the proceeds of the Letter of Credit, it could have moved forward promptly with notice and an opportunity to cure, which would have enabled Turquoise to draw on the Letter of Credit in September 2009. Yet Turquoise waited until March 2010 before notifying the Weiners of their default and right to cure. Even then, Turquoise was entitled to the contractually-agreed 15% liquidated damages from the Weiners by no later than April 11, 2010. Yet Turquoise waited for two full months beyond that date, until June 11, 2010 (one week ago), before instructing U.S. Bank to draw on the Letter of Credit. What's more, Turquoise was on notice in February 2010, a full four months ago, that the Weiners' Letter of Credit would expire on June 22, 2010, and that the issuing bank would not extend it. If Turquoise was so concerned about its ability to recover liquidated damages from the Weiners, why did it wait until June 11 to instruct U.S. Bank to draw on the Letter of Credit and why did it not seek emergency injunctive relief until June 16?

Taken in the aggregate, this pattern of delay is fundamentally inconsistent with Turquoise's allegations of irreparable injury. Such delay is a factor that this Court may properly consider in evaluating the propriety of a TRO or preliminary injunction. As one federal court aptly put it, "[a] party cannot delay … and then use an 'emergency' created by its own decisions concerning timing to support a motion for preliminary injunction." *Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Institute for Biomedical Research*, 650 F. Supp.2d 114, 123 (D. Mass. 2009).[4] Simply put, unexplained delay may "standing alone, ...

---

[4] *See also RoDa Drilling*, 552 F.3d at 1211 ("delay in seeking preliminary relief cuts against finding irreparable injury") (citations omitted); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (movant's delay "may raise questions regarding [movant]'s claim that he or she will face irreparable harm if a preliminary injunction is not entered"); *Kendall* (Continued)

-6-

preclude the granting of preliminary injunctive relief ... because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995) (internal quotation marks and citations omitted). This is precisely the case here. Turquoise tarried for months after being on notice of the Weiners' default and of their financial institution's unwillingness to extend the Letter of Credit beyond June 22, 2010. Its failure to act with reasonable diligence to protect its own interests despite an expansive opportunity to do so undercuts Turquoise's last-minute plea that it will suffer irreparable injury unless this Court issues a mandatory injunction to force U.S. Bank to do what Turquoise now wants.

Second, Turquoise's showing of irreparable injury is deficient because the type of harm threatened here (*i.e.*, Turquoise's inability to collect the 15% liquidated damages from the expiring Letter of Credit) is readily compensable via an award of money damages at trial. As the Eleventh Circuit has pointed out in a different context, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir. 1983).[5] In other words, "economic losses alone do not

---

*Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp.2d 853, 867 (S.D. Ohio 2008) (party's delay in taking action "can support an inference that the alleged harm is not sufficiently severe or irreparable to justify injunctive relief"); *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp.2d 603, 609 (N.D. Tex. 2006) ("Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.") (citation omitted); *Pharmacia Corp. v. Alcon Laboratories, Inc.*, 201 F. Supp.2d 335, 383 (D.N.J. 2002) (movant's protracted delay before seeking preliminary injunctive relief "knocks the bottom out of any claim of immediate and irreparable harm").

[5]   *See also Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1286 (11th Cir. 1990) (concluding that plaintiff had failed to demonstrate irreparable injury entitling it to preliminary injunction where it was unclear that injured persons could not obtain adequate relief by money damages following full trial); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("When there is an adequate remedy at law, a preliminary injunction is not appropriate."); *In re Aimster Copyright Litigation*, 334 F.3d 643, 655 (7th Cir. 2003) ("The only harm that is relevant to the decision to grant a preliminary injunction is irreparable harm, since if it is reparable by an award of damages at the (Continued)

justify a preliminary injunction." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 970 (11th Cir. 2005).

Turquoise insists that it will suffer irreparable injury because, unless U.S. Bank is forced to draw on the Letter of Credit by its June 22 expiration date, Turquoise will have "no recourse" against the Weiners for their default, inasmuch as drawing on the Letter of Credit represents Turquoise's "sole remedy" against them. (Doc. 38, at 5-6.) Even assuming that Turquoise's interpretation of the purchase agreement is correct and that it lacks any right to obtain the 15% liquidated damages from the Weiners through other means once their Letter of Credit lapses, this is not irreparable injury. Turquoise's Motion is not designed to force the Weiners to do or not do anything, and does not relate to any claim or cause of action that Turquoise has against the Weiners; indeed, Turquoise has not interposed any crossclaims against the Weiners in this litigation. Rather, Turquoise's Motion is intended to compel U.S. Bank to take action and to cease its purportedly wrongful conduct with respect to the Letter of Credit. Turquoise has sued U.S. Bank on breach of fiduciary duty, breach of contract, gross negligence and other theories for its alleged mishandling of escrow deposits and letters of credit. This Motion for TRO is squarely in furtherance of Turquoise's claims asserted against U.S. Bank. So, viewed properly, the relevant question is not whether Turquoise has an adequate remedy at law against the Weiners, but whether it has an adequate remedy at law against U.S. Bank. It obviously does. If Turquoise is correct that U.S. Bank's inaction on the Weiners' Letter of Credit amounts to a breach of fiduciary duty, gross negligence and so on, then Turquoise will be able to obtain a money judgment against U.S. Bank at trial that will make it whole for the full amount of the

---

end of trial there is no need for preliminary relief."); *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 579 (6th Cir. 2002) ("The fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages"); *Tuccillo v. Geisha NYC, LLC,* 635 F. Supp.2d 227, 241 (E.D.N.Y. 2009) ("A preliminary injunction is not appropriate where monetary damages will serve as adequate compensation."); *Bill Salter Advertising, Inc. v. City of Brewton, Ala.*, 486 F. Supp.2d 1314, 1329 (S.D. Ala. 2007) (recognizing that availability of adequate compensatory relief after trial militates heavily against irreparable harm finding); *Faculty Senate of Florida Int'l University v. Winn*, 477 F. Supp.2d 1198, 1208 (S.D. Fla. 2007) ("Irreparable harm is injury for which a monetary award cannot be adequate compensation.") (citation omitted).

liquidated damages it loses under this Letter of Credit as of the June 22 expiration date. Because a monetary award at trial can adequately compensate Turquoise, it is quite plain that there is no irreparable injury here.

### III. Conclusion.

Given the clear record evidence of Turquoise's dilatory conduct as well as the existence of an adequate legal remedy as to the party against whom injunctive relief is sought, the Court determines that Turquoise has failed to make a sufficient showing of irreparable injury to warrant the extraordinary remedy of a temporary restraining order or preliminary injunction. This finding is reinforced by the heightened legal standard applicable to requests for mandatory injunctive relief that alter the status quo, as opposed to requests for prohibitory injunctive relief that preserve it. Accordingly, the Motion for Temporary Restraining Order, Preliminary Injunction and Other Relief (doc. 38) is **denied**.

DONE and ORDERED this 18th day of June, 2010.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE