# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, etc., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 10-0204-WS-N ) |
| TURQUOISE PROPERTIES GULF, INC., et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion to dismiss and for attorneys' fees. (Doc. 247). Numerous defendants have filed responses, (Docs. 274, 276-29, 281), the plaintiff a reply, (Doc. 301), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

The plaintiff served as escrow agent in connection with a large condominium project, the developer of which was Turquoise Properties Gulf, Inc. ("Turquoise"). Purchasers presented cash deposits and/or letters of credit as earnest money, which the plaintiff held in escrow. When many of these purchasers did not proceed to closing, Turquoise declared them in default, instructed the plaintiff to present the letters of credit and reduce them to cash, and sought to recover the earnest money. Many of the purchasers initiated arbitration proceedings seeking return of their deposits. The plaintiff responded by initiating this interpleader action, depositing in the registry of the Court

over $18 million in cash representing over 80 units, as well as over 30 letters of credit.[1] Turquoise and the purchasers are named as defendants. Count I of the plaintiff's third amended complaint is for interpleader, with Counts II-VII asserting various claims against Turquoise.

The plaintiff's motion seeks an order accomplishing the following: (1) dismissing the plaintiff as a party to Count I; (2) requiring the defendants to present their claims to the disputed funds to the Court for resolution; (3) allowing the plaintiff a reasonable attorney's fee regarding Count I, to be paid out of the deposited funds; (4) allowing the plaintiff fees in connection with Count VI; (5) releasing and discharging the plaintiff from any liability "with respect to the subject-matter of this action"; and (6) permanently enjoining all defendants from pursuing any claim against the plaintiff "on account of the subject-matter of this action." (Doc. 247 at 8).

## DISCUSSION

**I. Dismissal.**

Once a disinterested stakeholder interpleads the contested funds, it may seek dismissal. *E.g., Orseck, P.A. v. Servicios Legales de Mesoamerica*, 699 F. Supp. 2d 1344, 1349 (S.D. Fla. 2010). No party questions that the plaintiff is a disinterested stakeholder.

The plaintiff assumes it had a duty to properly serve all defendants before seeking dismissal. (Doc. 247 at 2). While it has been a long and laborious process, the Court is satisfied that the plaintiff has done so.[2]

---

[1] The letters of credit were later released to the plaintiff's successor escrow agent; they are no longer at issue in this lawsuit.

[2] It is not clear that all defendants as to the letters of credit were properly served, but the transfer of the letters of credit to the successor escrow agent, and consequent termination of these proceedings as to those defendants, moots any question of service as to them.

The total amount of principal and interest at issue among the defendants is $18,494,027.43. (Doc. 295, Exhibit 6 at 3). The amount the plaintiff held in escrow was approximately $203,862.86 less than this. The legal responsibility for the shortfall lies with Turquoise.[3] The plaintiff was holding additional monies as to which only Turquoise, but no purchaser, had a claim. The plaintiff interpleaded a portion of these monies to compensate for the shortfall and retained the rest as a partial offset to amounts it claims from Turquoise. The amount of these interpleaded funds was $129,204.36. (*Id.* at 1). As a result, the total amount interpleaded is $76,658.50 less than the total amount of the principal and interest at issue among the defendants. (Doc. 247 at 5-6).

Turquoise argues that the plaintiff may not be dismissed until it interpleads this $76,658.50. (Doc. 274 at 13-14). The plaintiff, however, has turned over all the assets with which it was entrusted (and almost $130,000 more). The purchasers may have a claim for the $76,658.50 shortfall, but their claim is against Turquoise, which admits the shortfall is its legal responsibility. The shortfall is no impediment to the plaintiff's dismissal.[4]

According to the plaintiff, the funds it holds, as to which only Turquoise has a claim, represent or include interest on the deposits of certain purchasers who are not parties herein. (Doc. 247 at 5). Certain defendants argue that the plaintiff should be denied dismissal until and unless it interpleads these funds and makes these purchasers

---

[3] Months before the interpleader was filed, the plaintiff honored Turquoise's instructions to pay this amount, representing earnest money on a unit not involved in this litigation, to the construction lender. The purchasers later won an arbitration award for this amount, and the plaintiff was required to pay this amount a second time, to the purchasers. Count III of the third amended complaint demands that Turquoise reimburse the plaintiff, and Turquoise admits it is contractually obligated to indemnify the plaintiff this amount. (Doc. 225 at 34-35; Doc. 229 at 33-34; Doc. 274 at 13-14; Doc. 303 at 4).

[4] The plaintiff has filed a motion for partial judgment on the pleadings as to Count III, (Doc. 273), which is not yet ripe. However, since Turquoise has admitted its liability, the motion presumably will be granted. The Court expects the parties to work out among themselves how the missing $76,658.50 will be deposited in the registry of the Court.

parties herein. (Doc. 279 at 3). The complaining defendants do not explain their authority to force the plaintiff to initiate an interpleader as to funds to which they make no claim. If the plaintiff is content to pay the accrued interest it is holding to Turquoise and risk complaint by the affected purchasers, that is the plaintiff's business, not the defendants'.

## II. Presentation of Claims.

Turquoise asserts, and the plaintiff does not challenge, that the disputes between Turquoise and its purchasers with respect to the interpleaded funds are subject to binding arbitration. Indeed, the Court has already ordered the disbursement of funds and the dismissal of various defendants based on the results of such arbitration. On this record, the Court will not order the defendants to present their claims to the interpleaded funds for judicial resolution.

## III. Attorney's Fee – Count I.

The plaintiff seeks recovery of attorney's fees and costs incurred in connection with its interpleader. The plaintiff acknowledges that the decision whether to make such an award is subject to the Court's discretion. (Doc. 247 at 7).

An award of fees is "not warranted … when a stakeholder's interpleader claim arises out of the normal course of business." *In re: Mandalay Shores Co-operative Housing Association*, 21 F.3d 380, 383 (11th Cir. 1994). This is because, in a business in which "disputed claims to … proceeds … arise with some modicum of regularity … the costs of these occasional interpleader actions are foreseeable, [and] the [stakeholder] easily may allocate the costs of these suits to its customers." *Id*. While the rule is routinely applied to insurance companies, it also applies to banks. *Id*. "For instance, when a bank agrees to be the trustee of an estate, the bank knows there is a reasonable probability that various claimants will contest the ownership of a particular asset; since

the bank may allocate the costs of that contingency among all its trust customers, there is no basis for awarding the bank fees out of the corpus of the estate." *Id*.

What is true of insurance companies and of banks acting as trustee is also true of a bank acting as escrow agent. *See Wells Fargo Bank v. Magellan Owners Association*, 2010 WL 3328196 at *1 (D. Ariz. 2010) (refusing escrow agent's request for fees where it "would allow Wells Fargo to improperly shift the foreseeable costs of its business transaction with Magellan onto the various Claimants/Defendants"). It is at least as predictable that disputes will arise with respect to property held in escrow as that they will arise with respect to insurance proceeds or items held by a trustee, since the very purpose of an escrow arrangement is to place property in the hands of a third party pending completion of a business transaction, with the fate of the property dependent on the fulfillment vel non of terms and conditions as to which the contracting parties have incentive to see things differently. The very concept of escrow is pregnant with conflict.

The plaintiff cites *Mandalay* for the proposition that, "[w]hen the bank is acting merely as a depository, however, there is little expectation that a dispute as to ownership will arise; in such a case, an award of fees to the bank engaging in interpleader may be appropriate." 21 F.3d at 383. The plaintiff posits that it "was acting merely as the depository of funds for the interpleaded parties" and that it "had no expectation that a dispute over ownership of the funds would arise." (Doc. 247 at 7). This is untenable. At issue is not ownership of a demand account but of funds placed with the plaintiff precisely because their ultimate ownership was uncertain and potentially contentious. The plaintiff's position is irreconcilable not only with the very nature of escrow arrangements but with the actual escrow agreement it executed. That document explicitly addressed in great detail the plaintiff's options – including interpleader – in the event of "any dispute between Escrow Agent, Developer, or a Purchaser with respect to the holding or disposition of all or any portion of the Escrow Funds." (Doc. 274, Exhibit B to Exhibit 1 at 3-4). The plaintiff necessarily understood the patent likelihood of disputed

ownership. It thus had every incentive to reflect the risk of incurring legal expenses in interpleader when negotiating its fee; whether it actually did so is immaterial.

Because the plaintiff's interpleader arises out of the normal course of its business, an award of attorney's fees and costs incident to the interpleader is unwarranted and will not be made.

Even absent the normal-course-of-business rule, an award to the plaintiff would be problematic.

> Attorney's fees are justified in many interpleader actions for several reasons. First, an interpleader action often yields a cost-efficient resolution of a dispute in a single forum, rather than multiplicitous, piecemeal litigation. Second, the stakeholder in the asset often comes by the asset innocently and in no way provokes the dispute among the claimants. Third, fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset.

*Mandalay*, 21 F.3d at 383. The plaintiff argues that the circumstances "justif[ying]" an award of fees are present here, (Doc. 247 at 7-8), but this is far from obvious.

Apparently all of the defendant purchasers executed purchase agreements requiring that any dispute be resolved by binding arbitration. (Doc. 233 at 2-3; Doc. 274 at 13). The plaintiff admits that "arbitrators … must decide whether Turquoise or a purchaser prevails," (Doc. 301 at 2), and it claims that over 80 arbitration proceedings have been initiated. (*Id.* at 3; Doc. 303 at 2). Bringing this action therefore did not accomplish the avoidance of piecemeal resolution of claims, since the arbitrators rather than the Court must resolve them. What this interpleader has accomplished is to place on the defendants another layer of legal expense with no offsetting benefit to them. It has also placed a substantial burden on the Court in dealing with myriad jurisdictional, service and substantive issues, as evidenced by over 80 orders issued to date. While the plaintiff may have had the contractual right to file the interpleader, and while it may personally benefit from having done so, without some benefit to the claimants and/or judicial economy it is difficult to justify requiring others to subsidize the plaintiff's action.

[6]

There is nothing to indicate that the plaintiff provoked the dispute among the claimants, but neither did the plaintiff come upon the asset fortuitously. Rather, as discussed above, the plaintiff purposely and for compensation took on the role of escrow agent, with its inherent potential for conflict. The plaintiff did not simply happen to be in the wrong place at the wrong time; instead, it placed itself there in pursuit of its own economic self-interest. Its election to do so does not justify shifting the cost of its choice to others.

As to the magnitude of its request, the plaintiff "does not anticipate that the amount it will request for fees for the interpleader will exceed 1% of the more than $18 Million corpus deposited." (Doc. 301 at 3 n.1). Framed as a percentage of the whole, perhaps such a request does seem "quite minor," but in absolute terms the plaintiff is suggesting a demand for over $184,000. This is a staggering sum for filing an action that has required little of the plaintiff but service of process, that has benefited no one but itself, and that has eaten away the value of claims by compelling additional but unproductive legal services.

## IV. Attorney's Fee – Count VI.

The plaintiff seeks an award of "the rest of the fees admitted in the pleadings as to County [sic] VI." (Doc. 247 at 8). The plaintiff does not address this request in its briefing, and the Court will not do so on its behalf.

## V. Discharge.

This is a statutory interpleader action brought under 28 U.S.C. § 1335. (Doc. 225 at 27). In a statutory interpleader, a court may "discharge the plaintiff from further liability." 28 U.S.C. § 2361.

The plaintiff seeks discharge from all liability "with respect to the subject-matter of this action, including but not limited to all claims arising under the Escrow Agreement and US Bank's duties or conduct as escrow agent." (Doc. 247 at 8). As this Court has

held, "[w]here a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy." *RBC Bank (USA) v. Holiday Isle, LLC*, 2009 WL 3031186 at *2 (S.D. Ala. 2009) (internal quotes omitted). The plaintiff is entitled to discharge to this limited extent.

"However, … any counterclaim that is truly independent of who was entitled to the fund is permissible." *RBC Bank (USA) v. Holiday Isle, LLC*, 2009 WL 2982836 at *1 (S.D. Ala. 2009) (internal quotes omitted). There are any number of possible claims against an interpleading escrow agent, arising under the escrow agreement or the escrow's duties or conduct as escrow agent, that are truly independent of which claimant is entitled to the interpleaded fund. The plaintiff has not endeavored to show that Turquoise's nine counterclaims, (Doc. 18 at 36-52), or the unknown claims it suggests have been asserted against it in various arbitration proceedings, cannot survive the plaintiff's interpleader and dismissal under this test. The plaintiff remains free to file a motion to dismiss Turquoise's counterclaims on these or other grounds, and it is likewise free to assert in the arbitration proceedings that its dismissal from the interpleader count creates a bar to further pursuit of it in those proceedings, but the Court will not make the broad pronouncement of discharge that the plaintiff seeks.

## VI. Injunction.

Statutory interpleader permits a court to "enter [an] order restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property" and to "make the injunction permanent." 28 U.S.C. § 2361.

The plaintiff asks that the claimants be enjoined from pursuing it in their arbitration proceedings. While Section 2361 does not address arbitration proceedings, the defendants voice no objection to so extending the injunction.

"The injunction cannot extend to litigation involving the fund that is not within the subject matter of the interpleader." *U.S. Fire Insurance Co. v. Asbestospray, Inc.*, 182 F.3d 201, 211 (3rd Cir. 1999). This rule parallels the limits on discharge discussed in Part V, and the injunction will sweep no further.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion is **granted** to the extent it seeks dismissal of the plaintiff as a party to Count I of the third amended complaint. The plaintiff is so **dismissed**. The motion is also **granted** to the extent it seeks discharge of liability for further claims to the interpleaded funds and for any claims directly relating to the plaintiff's failure to resolve the controversies among the claimants to those funds. The plaintiff is so **discharged**. The motion is also **granted** to the extent it seeks to enjoin the defendants from pursuing any litigation or arbitration against the plaintiff on any claim to the funds or any claim directly relating to the plaintiff's failure to resolve the controversies among the claimants to those funds. The defendants are so **enjoined**. In all other respects, the plaintiff's motion is **denied**.

DONE and ORDERED this 17th day of November, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE